**SIGNED this 4th day of September, 2020**

*/s/ Nicholas W. Whittenburg*
**Nicholas W. Whittenburg**
**UNITED STATES BANKRUPTCY JUDGE**

_____

**IN THE UNITED STATES BANKRUPTCY COURT FOR
THE EASTERN DISTRICT OF TENNESSEE
SOUTHERN DIVISION**

| | | |
|---|---|---|
| **In re:** | ) | |
| | ) | **Joint Administration Case** |
| **CP Liquidation of Cleveland, Inc.,** *et al.* | ) | **No. 1:17-bk-11920-NWW** |
| | ) | **Chapter 11** |
| **Debtors** | ) | |

**M E M O R A N D U M**

Two contested matters are before the court in these cases administered jointly. On April 23, 2020, McKesson Corporation filed a motion for determination of secured status pursuant to Fed. R. Bankr. P. 3012(a)(1). On May 8, 2020, the chapter 11 trustee filed an objection to McKesson's proof of claim pursuant to Fed. R. Bankr. P. 3007. With the parties' consent, the court construed McKesson's motion as a motion for summary judgment and the trustee's objection as a cross-motion for summary judg-

ment pursuant to Fed. R. Bankr. P. 7056, as made applicable to these contested matters pursuant to Fed. R. Bankr. P. 9014(c).

Jurisdiction is proper in this court pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(B) and (K).

## I. Facts and Procedural Posture

The material facts are undisputed. Dr. Terry Forshee and his wife, Angela Forshee, are the sole shareholders, directors, and officers of Cherokee Pharmacy and Medical Supply of Dalton, Inc. ("Cherokee Pharmacy Dalton"), a Georgia corporation. The company operated a retail drug store and pharmacy located in Dalton, Georgia.

Dr. and Mrs. Forshee are also the sole shareholders, directors, and officers of Cherokee Pharmacy and Medical Supply, Inc. ("Cherokee Pharmacy Cleveland"), a Tennessee corporation. It operated a retail drug store and pharmacy located in Cleveland, Tennessee.

In early January 2017, the Forshees agreed to sell all of their stock in Cherokee Pharmacy Cleveland and in Cherokee Pharmacy Dalton to Dr. Jonathan Marquess and Pamela Marquess. The Forshees and the Marquesses executed a Stock Purchase Agreement (the "SPA"). The SPA is dated January 15, 2017. However, the trustee contends that the SPA may have been executed at a later date, perhaps January 20, 2017. The Forshees agreed to sell all of their shares of stock in each company to the Marquesses for a purchase price of $1.6 million plus the cost of the inventory held by the two companies. Closing was to occur on or before January 30, 2017. Although contemplating a later closing date, the SPA expressly provides that "[the Marquesses]

shall take possession of the [corporations'] locations on January 16, 2017, and shall begin operations of the businesses under a Power of Attorney signed by Sellers in favor of Purchasers on even date hereof." Both Cherokee Pharmacy Dalton and Cherokee Pharmacy Cleveland, through their president, Dr. Forshee, joined in and consented to the SPA.

Although the SPA contemplated that the Forshees would execute the power of attorney simultaneously, they did not do so on January 15, 2017. Instead, Dr. Forshee, as president of Cherokee Pharmacy Cleveland and Cherokee Pharmacy Dalton, executed powers of attorney dated January 26, 2017. The power of attorney for Cherokee Pharmacy Dalton appointed Dr. Marquess as the company's attorney in fact and authorized him to execute all documents relating to the company's pharmaceutical licenses and registrations. Consistent with the SPA's provision for the Marquesses to "take possession of the [corporations'] locations . . . and . . . operations . . . under a Power of Attorney" the power of attorney also authorized Dr. Marquess "[t]o do any other thing or perform any other act . . . which [Cherokee Pharmacy Dalton] might do by and through its officers, it being intended that this shall be a general power of attorney."

Before execution of the SPA and the power of attorney, Dr. Marquess submitted a customer application to McKesson on behalf of Cherokee Pharmacy Dalton dated January 11, 2017. McKesson sells pharmaceutical goods and supplies to pharmacies such as Cherokee Pharmacy Dalton. It is undisputed that the customer application, if enforceable, granted McKesson a security interest in all of Cherokee Pharmacy Dalton's personal property.

McKesson approved the customer application that Dr. Marquess submitted, and after receiving an executed copy of the power of attorney, accepted and fulfilled orders for pharmaceutical goods from Cherokee Pharmacy Dalton, beginning January 31, 2017. On February 15, 2017, Cherokee Pharmacy Dalton, through Dr. Marquess, executed a promissory note payable to McKesson in the principal amount of $67,997.80 representing the unpaid amount owing at that time for goods delivered to the company.

The Forshees and the Marquesses never closed the stock purchase, but the Marquesses did pay $600,000.00 to the Forshees on February 3, 2017, in partial satisfaction of the purchase price. Why closing was not completed is unclear.

On April 28, 2017, Cherokee Pharmacy Dalton and Cherokee Pharmacy Cleveland filed voluntary petitions for relief under chapter 11 of the bankruptcy code. 11 U.S.C. § 301. On August 25, 2017, McKesson filed proof of claim 6-1 in the Cherokee Pharmacy Dalton case in the total amount of $103,725.94. The claim consists of (i) $56,644.67 for unpaid installments due under the promissory note, and (ii) $47,017.18 for unsatisfied invoices entitled to priority treatment as administrative expenses pursuant to 11 U.S.C. §§ 503(b)(2) and (9) and 507(a)(2). McKesson, relying on the security interest provided in the customer application, contends that the entire claim is secured.

On April 23, 2020, McKesson filed its motion for determination of secured status. It seeks a determination by this court that its $103,725.94 claim, plus interest, late charges, and legal fees, is a fully secured claim pursuant to 11 U.S.C. § 506(a). In his objection to McKesson's claim, the trustee does not dispute that the value of the

estate's interest in the property encumbered by any security interest is such that McKesson's claim would qualify as a fully secured claim. *See* 11 U.S.C. § 506(a). Instead, the trustee challenges the validity of the security interest. Specifically, the trustee contends that Dr. Marquess was not Cherokee Pharmacy Dalton's agent with authority to execute the customer application, and therefore, the security interest contained therein is not binding on the company. Although not in the objection to claim, the trustee asserts in his reply to McKesson's motion that Dr. Marquess likewise lacked authority to execute the promissory note on behalf of Cherokee Pharmacy Dalton, so it too is unenforceable.

Because the trustee challenges the validity of a lien in property, it should be prosecuted as an adversary proceeding rather than as a contested matter. FED. R. BANKR. P. 7001(2). However, with the parties' consent, the court treats McKesson's motion and the trustee's objection as motions for summary judgment. The parties submitted statements of undisputed material facts and responses thereto and thoroughly briefed the issues presented. As discussed below, after considering the motion, the objection, the statements and supporting documents, and the parties' briefs, the court grants McKesson's motion for summary judgment in part and denies the trustee's motion for summary judgment.

## II. Summary Judgment Standard

A party is entitled to summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a) (made applicable by FED. R. BANKR. P. 7056).

-5-

When considering a motion for summary judgment, the court construes "all reasonable inferences in favor of the nonmoving party." *Waeschle v. Dragovic*, 576 F.3d 539, 543 (6th Cir. 2009) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). If evidence would permit the trier of fact to return a verdict for the nonmoving party, then a genuine issue of material fact exists, and the court must deny summary judgment. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). On the other hand, if evidence would not permit the trier of fact to return a verdict for the nonmoving party, then no genuine issue of material fact exists. Substantive law identifies material facts, and irrelevant or unnecessary facts will not be considered. *See id.*

### III. Legal Analysis

In Georgia, "an agency relationship can arise in three distinct ways: expressly, by implication, or through subsequent ratification by the principal of the agent's conduct." *Agilysys, Inc. v. Hall*, 258 F. Supp. 3d 1331, 1347 (N.D. Ga. 2017) (quoting *J'Carpc, LLC v. Wilkins*, 545 F. Supp. 2d 1330, 1337 (N.D. Ga. 2008)) (citing O.C.G.A. § 10-6-1)). The law does not prescribe a method for creating an express agency relationship. Instead, "[a] corporation may create an agent in its usual mode of transacting business and without its corporate seal." O.C.G.A. § 10-6-2.[1] The usual method for

---

[1] The trustee argues that a power of attorney is not a proper way for a corporation to establish an agency relationship, relying primarily on O.C.G.A. § 10-6B-3(3). That provision simply states that Georgia's Power of Attorney Act does not apply to the delegation of entity's management rights. First, that provision does not proscribe the use of a power of attorney to appoint an agent. It states that any such powers are not governed by the act. Second, the act does not apply to a power of attorney executed before July 1, 2017, and, therefore, does not apply to the January 26, 2017 powers of attorney present in this case. *Id.* § 10-6B-81(a). Finally, Georgia has long recognized the use of powers of attorney by corporations. *See, e.g., Long v. Powell*, 48 S.E. 185 (Ga. 1904).

corporations to create an agency relationship is "shareholder action in the adoption of charters, by-laws, resolutions and similar conduct vesting corporate agents with authority to act." *Whiteway Neon-Ad, Inc. v. Opportunities Indus. Ctr. of Atlanta, Inc.*, 252 S.E.2d 604, 605 (Ga. 1979). An agent's authority "shall be construed to include all necessary and usual means for effectually executing it." O.C.G.A. § 10-6-50.

It is undisputed that Dr. Forshee, as president of Cherokee Pharmacy Dalton, executed the power of attorney on January 26, 2017. Dr. Marquess was appointed as the attorney in fact for Cherokee Pharmacy Dalton. The power of attorney expressly authorized him to take any action "which [the company] might do by and through its officers." Also undisputed is that the Forshees executed the SPA prior to the delivery of the power of attorney. The SPA was consented to and joined in by Cherokee Pharmacy Dalton through its president, Dr. Forshee. The SPA expressly authorized the Marquesses to "take possession of" the company and "begin operations of" its business under a power of attorney. Thus, with the SPA, the Forshees—the sole shareholders, directors, and officers of Cherokee Pharmacy Dalton—authorized the company to issue the power of attorney.

The trustee points to evidence that the Forshees intended only to allow the Marquesses to act for Cherokee Pharmacy Dalton regarding the company's pharmaceutical licenses and registrations. The SPA and power of attorney are unambiguous, though. Even if the trustee's extrinsic evidence were admitted at trial, no reasonable trier of fact could conclude that the authority afforded to Dr. Marquess was other than as clearly stated in the power of attorney. There is no genuine dispute that by executing the power of attorney as contemplated by the SPA, Cherokee Pharmacy

Dalton expressly made Dr. Marquess the company's agent with authority to perform any act that the company "might do by and through its officers." A Georgia corporation such as Cherokee Pharmacy Dalton may "do all things necessary or convenient to carry out its business and affairs" through its officers and agents, including purchasing personal property, making contracts, borrowing money, pledging assets, and issuing notes. O.C.G.A. § 14-2-302(4)–(7).

When Dr. Marquess executed the promissory note on February 15, 2017, on behalf of Cherokee Pharmacy Dalton, he was the company's agent with express authority to make a note. Accordingly, the promissory note is binding on Cherokee Pharmacy Dalton and its bankruptcy estate.

The validity of the security interest granted in the customer application is more problematic. The customer application was executed by Dr. Marquess before execution of either the SPA or the power of attorney. Consequently, he had no express authority to pledge Cherokee Pharmacy Dalton's assets. McKesson maintains that Cherokee Pharmacy Dalton ratified the customer application.

Ratification is "the confirmation by one of an act performed by another without authority." *Hendrix v. First Bank of Savannah*, 394 S.E.2d 134, 135 (Ga. Ct. App. 1990); *see also Brock v. Yale Mrtg. Co.*, 700 S.E.2d 583, 588 (Ga. 2010) ("[R]atification consists of an externally observable manifestation of assent to be bound by the prior act of another person."); RESTATEMENT (THIRD) OF AGENCY § 4.01 cmt. B (AM. LAW INST. 2006). Ratification may be express or implied by the principal's acts or silence, and once made, it is irrevocable. O.C.G.A. § 10-6-52. "For ratification to be effective, the principal must know of the agent's unauthorized act and, with full knowledge of all the

material facts, accept and retain the benefits of the unauthorized act." *Bresnahan v. Lighthouse Mission*, 230 Ga. App. 389, 392, 496 S.E.2d 351 (1998). As best explained by the Georgia Court of Appeals:

> A presumption of ratification can arise from slight acts of confirmation, or from mere silence or acquiescence, or where the principal receives and holds the fruits of the agent's act. However, "assuming that the corporation did receive the benefits of the plaintiff's alleged services, in order to prove ratification by the corporation[,] [the plaintiff] must prove that the principal, the governing body of the corporation or some official or agent who had authority to receive such notice had full knowledge of all material facts in connection with the transaction in question. And such knowledge must have been acquired by the principal otherwise than by the knowledge of the agent the ratification of whose acts is contended for."

*Governor's Towne Club, Inc. v. Caffrey Constr. Co.*, 614 S.E.2d 892, 894–95 (Ga. Ct. App. 2005) (citations omitted).

From January 31, 2017, through the petition date, McKesson supplied pharmaceutical goods to Cherokee Pharmacy Dalton. The pharmacy retained the goods and presumably sold at least some portion thereof to its customers. The company even paid for some of the delivered goods and listed McKesson as a creditor in its bankruptcy schedules. Cherokee Pharmacy Dalton clearly retained the fruits of Dr. Marquess's acts, remained silent, and ratified any and all purchases of goods ordered by Dr. Marquess. Clearly, the company ratified the purchases from McKesson and is liable for any unpaid amount owing for such purchases.

The trustee argues that the company did not ratify the unauthorized pledge contained in the customer application. Specifically, he maintains that only the Forshees, as the directors and officers of the company, can ratify the pledge contained in the customer application and that they had no knowledge of that material term until after

the petition date. Assuming the Forshees had no knowledge of the unauthorized grant of a security interest in Cherokee Pharmacy Dalton's assets until after the petition date, a trial on the merits is nevertheless unnecessary.

As noted above, to ratify a previously unauthorized act, it must be proved that "the governing body of the corporation or some official or **agent who had authority** . . . had full knowledge of all material facts." *Governor's Towne Club*, 614 S.E.2d at 895 (emphasis added). As also noted, on and after the execution of the power of attorney on January 26, 2017, Dr. Marquess became an agent for the company with authority to perform any act that Cherokee Pharmacy Dalton might do through its officers, including the pledge of collateral. O.C.G.A. § 14-2-302(5) (conferring on every corporation the power to pledge its property). It certainly may not be disputed that Dr. Marquess had full knowledge of all material terms in the customer application, including the security interest contained therein. As Dr. Marquess was an agent of Cherokee Pharmacy Dalton with both authority to pledge assets and knowledge of the prior unauthorized pledge, Cherokee Pharmacy Dalton ratified the security interest afforded McKesson.

This court is mindful that the quotes from the cases above, particularly the quote from *Governor's Towne Club*, are consistent with the trustee's argument and suggest that, in order to ratify an unauthorized act, the knowledge of material facts attributed to the principal must be from a source other than the agent whose unauthorized act is at issue. Those quotes suggest that someone other than Dr. Marquess—namely, the Forshees—must have knowledge of the pledge for Cherokee Pharmacy Dalton to ratify it. However, when the agent who engaged in the unauthorized act (in this case Dr. Marquess when he executed the customer application on behalf of the company) is

subsequently given express authority to perform the act, then the knowledge of the newly authorized agent may be attributed to the principal. *See, e.g.*, *German-American Mut. Life Ass'n v. Farley*, 29 S.E. 615, 622 (Ga. 1897) ("Corporations are unlike individuals in one respect. They can acquire knowledge only through the medium of agents. . . . [I]f the agent be competent to contract, he is competent to acquire knowledge for the corporation on whose behalf he does contract. . . . [I]t is a rule of universal acceptance that such knowledge is imputable to the principal in the same manner and to the same effect as though it had been communicated to, or acquired by, him in person."); *Reserve Life Ins. Co. v. Meeks*, 174 S.E.2d 585, 587 (Ga. Ct. App. 1970) (stating the general rule that an agent's knowledge is attributable to the principal), *cert. denied*; *Hicks v. M.H.A. Inc.*, 129 S.E.2d 817, 820 (Ga. Ct. App. 1963) (citation omitted) ("[T]he knowledge of the agent is the knowledge of the principal."). If Dr. Marquess had authority to bind Cherokee Pharmacy Dalton by signing the customer application after the execution of the power of attorney on January 26, 2017, then he certainly had authority to ratify the agreement and his knowledge of the material terms of the customer agreement should be attributed to the company.[2]

Relying on O.C.G.A. § 14-2-1201(b)(2), the trustee contends that the granting of the security interest is unenforceable. That provision provides that "[a] corporation may, **on the terms and conditions and for the consideration determined by the board of**

---

[2] The parties have proffered conflicting evidence regarding whether granting a security interest to a vendor is in the ordinary course of business and, therefore, authorized as an exercise of implied authority. *See* O.C.G.A. § 14-2-801 (generally authorizing the chief executive officer to conduct all ordinary business on behalf of a corporation). Because the court's decision is not predicated on implied authority, any factual dispute relating to that issue is immaterial.

***directors*** . . . [m]ortgage, pledge, dedicate to the repayment of indebtedness, whether with or without recourse, or otherwise encumber any or all of its property whether or not in the usual and regular course of business." O.C.G.A. § 14-2-1201(b)(2) (emphasis added). Because the Forshees, the directors of Cherokee Pharmacy Dalton, did not expressly approve the "terms and conditions" of the pledge to McKesson through a resolution or otherwise, the trustee maintains that the security interest is void as an ultra vires act. It is undisputed that there is no board resolution specifically authorizing Dr. Marquess to encumber the company's assets on any terms. Nevertheless, that defense in not available to the trustee in this case.

     First, the Forshees, the sole directors of the company, cloaked Dr. Marquess with apparent authority to grant the security interest to McKesson. As stated previously, they executed the SPA that expressly contemplated that the Marquesses would take possession of and begin operating Cherokee Pharmacy Dalton pursuant to a power of attorney. Then, Dr. Forshee, as president of the company, executed the power of attorney authorizing Dr. Marquess to engage in any act that might be done by Cherokee Pharmacy Dalton's officers. Georgia law authorizes corporations to pledge assets to secure its debts. O.C.G.A. § 14-2-302(5). McKesson—a company that in the ordinary course of its business sells pharmaceutical goods to pharmacies—reasonably and in good faith relied on the power of attorney when it sold goods to Cherokee Pharmacy Dalton on secured credit terms. Under those facts, neither the company nor its bankruptcy trustee may now disavow the terms of the customer agreement. *Commercial Credit Corp. v. Noles*, 69 S.E.2d 309, 312 (Ga. Ct. App. 1952) ("[W]here the principal by his acts or conduct makes it appear, to a person of reasonable prudence and good faith

who deals with his agent, that such agent has such authority, . . . the principal may not assert that his agent has authority less extensive than that apparent authority which is reasonably deducible from the conduct of the parties.").

Similarly, the trustee is estopped from reliance on the ultra vires defense. *See, e.g.*, *Savannah Ice Co. v. Canal-Louisiana Bank & Trust Co.*, 79 S.E. 45, 49 (Ga. Ct. App. 1913) (citation omitted) ("Where a corporation has charter authority to do an act, it will always be estopped to question the authority of one whom it held out as having the power to act for it, or whose act has been ratified by the corporation after its performance."). As stated by the Supreme Court of Georgia, "[n]o application of the doctrine of ultra vires acts will allow a corporation to retain and use the benefits of a contract and at the same time refuse to comply with its part of the contract under which they were obtained." *Alexis, Inc. v. Werbell*, 75 S.E.2d 168, 171 (Ga. 1953) (citation omitted); *see also Flatauer Fixture & Sales Corp. v. Garcia & Assocs.*, 109 S.E. 2d 818 (Ga. Ct. App. 1959) (recognizing that the doctrine of ultra vires acts will not allow a corporation to retain the benefits of a contract and avoid its burdens).

Again, McKesson reasonably honored orders placed by Cherokee Pharmacy Dalton's agent, Dr. Marquess, by delivering the pharmaceutical goods in reliance on the terms of the customer application. McKesson did not begin delivering goods until after receiving the power of attorney executed by the company's president. The scope of authority granted by the power of attorney was entirely consistent with provisions in the SPA signed by the company's sole shareholders and directors. Cherokee Pharmacy Dalton retained the goods delivered and sold some or all of them to its customers. The shareholders, directors, and officers of a company can not expressly delegate authority

to Dr. Marquess to operate the company and then challenge the contracts he makes with vendors in reliance on that delegation. Cherokee Pharmacy Dalton and its bankruptcy estate are bound as a matter of law by all of the terms of the customer application, including the security interest granted to McKesson.

### IV. Conclusion

For the foregoing reasons, the court holds that, as a matter of law, McKesson's claim is fully secured under 11 U.S.C. § 506(a). By separate order in the above styled case the court is granting McKesson's motion for determination of secured status in part. Also by separate order in Case No. 17-11919, the court will overrule the trustee's objection to claim. The orders will be without prejudice to McKesson amending its proof of claim to include attorney fees, late charges, and interest. The orders will also be without prejudice to the trustee objecting to the amount of McKesson's secured claim under 11 U.S.C. § 502(b).[3]

# # #

---

[3] With its motion, McKesson not only requested a determination that its entire claim is a secured claim under 11 U.S.C. § 506(a), but also sought a declaration that its entire claim plus attorney fees, late charges, and interest is allowed. In his reply to the motion, the trustee indicates that he has questions concerning the amount of McKesson's claim and has requested but not received all supporting invoices. It appears that the trustee is presently unable to present facts opposing the amounts requested and needs additional time to take discovery and complete his investigation. As the amount of McKesson's claim may be in dispute, it is difficult for the court to liquidate the principal indebtedness and any interest, late charges, or attorney fees to which McKesson may be entitled. Accordingly, the court is denying without prejudice McKesson's motion to the extent it seeks to liquidate the total amount of its claim pursuant to FED. R. CIV. P. 56(d), as made applicable to this proceeding pursuant to FED. R. BANKR. P. 7056.